**In re Virgil ROTT and Shirley H. Rott, Debtors.**

**Bankruptcy No. 84–05050.**

United States Bankruptcy Court, D. North Dakota.

March 21, 1985.

David Johnson, Fargo, N.D., for debtor.

Jon Brakke, Fargo, N.D., for Creditors Committee.

Roger J. Minch, Fargo, N.D., for PCA.

William P. Westphal, Minneapolis, Minn., U.S. Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

On November 16, 1984, the Unsecured Creditors' Committee filed a Motion seeking dismissal of the above pending Chapter 11 case based upon section 1112(d) of the Bankruptcy Code. Production Credit Association of Fargo and Connecticut General Life Insurance Company joined in the Motion. The Debtors filed an Objection, and a hearing was held before the undersigned

on December 12, 1984. At the December 12 hearing, testimony was given by the Debtor regarding his Plan of Reorganization and the efforts undertaken to secure ongoing financing for his operation. The Court, at the conclusion of the hearing, orally found that reorganization was not likely and accordingly granted the Unsecured Creditors' Committee's Motion for dismissal effective March 15, 1985, unless a Plan of Reorganization were confirmed prior to that date. The Court's findings and its conclusions were previously made from the bench but are further amplified as noted herein.

The Debtors filed a Petition on January 30, 1984. A Disclosure Statement and Plan were first proposed on July 9, 1984, with a Supplemental Disclosure Statement being filed on August 8, 1984. At a September 26, 1984, hearing on approval of the Disclosure Statement, approval was denied because of numerous deficiencies which the Debtors were directed to correct in 60 days. An Amended Disclosure Statement and an Amended Plan were filed on January 18, 1985, with two Supplements to the Disclosure Statement being filed on February 8 and February 25, 1985. Production Credit Association, the Unsecured Creditors' Committee and the United States Trustee object to the Amended Plan as well as the Amended Disclosure Statement. A review of the objections reveals that they are substantially with merit and, in part, again raise the question of whether there is any reasonable likelihood of rehabilitation.

Section 1112(b) of the Bankruptcy Code provides that a pending Chapter 11 case may be dismissed for cause, including "(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; (3) unreasonable delay by the debtor that is prejudicial to creditors ..." What constitutes cause for dismissal of a Chapter 11 case is a matter of judicial discretion under the circumstances of each case.

The Court, based upon the file, the records therein and the evidence presented at the December 12, 1984 hearing, concluded that ample cause existed for the dismissal of the case. The reasons for this conclusion are as herein noted.

The Debtors own farmland in LaMoure and Kidder County, North Dakota, with their operation in recent years being principally one of raising cattle. The land owned by the Debtors comprises approximately 2,916 acres to which the Debtors, in their bankruptcy Schedules, attributed a market value of $1 million. At the time of filing, the Debtors were indebted to Connecticut General Life Insurance Company for $1,271,886.00 plus interest, secured by a mortgage on the above real estate. Further, according to the Debtors' Schedules, total secured indebtedness was $2,200,000.00, and the total value of all assets was $1,278,000.00.

In 1984, 2,530 acres of the Debtors' crop land were cash rented including 940 acres rented to their son, Dwight Rott, who at least as of December 12 had not yet made any payment. The Debtors did not farm to any extent in 1984 but, at the December hearing, Virgil Rott indicated he hoped to farm in 1985 depending upon the success of securing a source of financing. That source, outlined in detail at the December hearing and again mentioned in the recently filed Disclosure Statement, is by means of a lease of all crop land to an entity known as Rott Enterprises, Inc. This proposed lease will afford the Debtors some $240,000.00 for the 1985 operating expenses. Rott Enterprises is a fresh corporation founded by the Debtors' son for the purpose of constructing and developing an ethanol gas plant near Jamestown, North Dakota. Rott Enterprises has no substantial capitalization nor does it have any business experience or history. The scheme, once the plant is operating, is to utilize in part the crops produced by the Debtors. The viability of the Rott Enterprises venture is entirely a matter of speculation. It is dependent upon a rather circuitous financing arrangement with a foreign investment group involving $13 million, 10% of which is to be picked up by the Bank of

North Dakota. There has been no evidence presented to suggest that financing of such magnitude is in the offing or that the ethanol plant is anything more than a fanciful proposition. At the December hearing, Virgil Rott stated that the latest date he anticipated receiving financing from Rott Enterprises was February 1, 1985. So far, no money has been received from that source and, according to Virgil Rott, the Rott Enterprises venture is the Debtors' only source for 1985 operating capital, without which they will once again have to cash rent their land for another season.

The Debtors were indebted to Production Credit Association for a sum in excess of $750,000.00 secured by all livestock, farm equipment and a second mortgage on the farm real estate. This Court, by Order entered July 5, 1984, granted PCA relief from stay as to the cattle and machinery secured to it. PCA has repossessed the machinery and cattle, the consequence being that the Debtors are without the necessary machinery or equipment with which to pursue farming. It has been suggested that the Debtors will lease the equipment necessary to operate the land in 1985. No leases, however, have been entered into and, without the operational funding from Rott Enterprises, it is unlikely that lease payments could be made.

This Court, in considering Production Credit Association's earlier Motion for relief from stay, considered the nature of the Debtors' operation and the probable likelihood of a successful reorganization. It was established then that the Debtors lost money in 1981 and 1982. The Disclosure Statement filed in January of 1985 reveals further losses in 1983 but a marginal profit in 1984 of $9,000.00. The principal source of the 1984 income was $60,000.00 derived from land rent. Only $10,000.00 was derived from the Debtors' cattle and farming operation. Evidence produced at the hearing on PCA's relief from stay motion also demonstrated that the cash rent was virtually their only source of income in 1984. The Court believes that without the infusion of cash from the cash rent, the income deficit would be much worse than as presently depicted. The Court concluded then, and again at the December 1984 hearing, that there was no reasonable prospect of reorganization based upon the Debtors' past history and present projections. The unfortunate reality is that the Debtors do not have and will not have the means to cash flow their farming operation. In the present instance, they no longer have the equipment necessary to work towards reorganization. In 1984, despite renting out all but 100 acres of their crop land, they still incurred expenses of $61,000.00 without making payments to any large secured creditor. Without operating capital for 1985, the Debtors will once again relinquish responsibility for their farmland to tenants under cash leases, one of whom is in default for the previous year.

The Debtors have enjoyed over one year under the protection of Chapter 11, but with that protection comes the responsibility of making a concerted positive effort towards reorganization. This Court has been careful to afford to agricultural debtors an extended period long beyond the usual 120 days within which to reorganize even in those cases where reorganization initially appears hopeless. This extra measure of consideration has often had the effect of a case remaining open beyond one year without a confirmed plan in place so long as the debtor has in his possession the means to carry on his operation and is making positive gains in that direction. However, the Court will not permit such cases to remain open indefinitely without demonstrable and realistic gains being made towards reorganization. To do so would be to merely allow a debtor to twist and turn in increasingly negative financial winds while the estate slowly disintegrates to the ultimate ruin of the creditors as well as the debtor. Over the ensuing year, numerous creditors including Connecticut General have been required to stand by while their collateral is used, while it continues to depreciate and all without demonstrable progress being made towards reorganization. Another year of placing substantially all of the farmland in the hands

of tenants is not progress towards reorganization. In addition, the Debtors must be cognizant of the fact that Connecticut General Life Insurance Company and other secured creditors would be entitled to relief from stay pursuant to section 362(d)(1) if the requisite elements of that section were met. If these requirements were met by Connecticut General, it would be allowed to foreclose on its mortgage with the effect being to leave the Debtors with little if any property with which to effectuate a plan.

The only conclusion the Court can reach based upon the Disclosure Statements, the proposed Plan, the file and records herein, and the evidence presented at the December 12, 1984 hearing, is that the Debtors' operation is not viable and that nothing positive will be accomplished by another year in Chapter 11.

Accordingly, and for the reasons stated, IT IS HEREBY ORDERED that the above-entitled proceedings be and they are hereby dismissed. All hearings regarding pending matters are cancelled.