In re Lynn A. LANGSETH and Delores H. Langseth, Debtors.

Bankruptcy No. 86–06068.

United States Bankruptcy Court, D. North Dakota.

Jan. 23, 1987.

Lynn and Delores Langseth, pro se.

Richard Olson, Minot, N.D., for Federal Land Bank.

Russel G. Robinson, Minot, N.D., for Gate City Sav. Bank.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matters before the court are two motions to dismiss filed by Federal Land Bank of St. Paul (FLB), on December 29, 1986, and Gate City Federal Savings Bank of Minot (Gate City) on January 12, 1987. Both movants allege that the instant Chapter 11 petition, being the debtors' second petition, was filed in bad faith, that there is a continuing loss to and diminution of the estate, that no reasonable likelihood of rehabilitation exists, that an effective reorganization is not feasible, and that dismissal of the case is in the best interest of creditors. The debtors object to both motions, and allege that the interest of the creditors and the debtors would not be best served by a dismissal, that there has not been a continuing loss to the estate, that the debtors have the ability to affectuate a plan, and that this Chapter 11 petition has been filed in good faith.

A hearing was held before the undersigned on January 20, 1987, at which time the parties made oral arguments and a limited amount of testimony was presented.

The debtors, Lynn and Delores Langseth (Debtors), filed their first Chapter 11 petition on August 11, 1984. A Disclosure Statement and Plan of Reorganization were filed by the Debtors on February 8, 1985. On August 20, 1985, the Debtors filed An Amended Disclosure Statement and a First Modification Of Debtors' Plan Of Reorganization. The Amended Disclosure Statement was approved on February 25, 1986. The Debtors' original Chapter 11 petition

was dismissed on November 17, 1986. The Debtors' present petition was filed on December 12, 1986, the eve of a foreclosure sale scheduled by FLB. On January 20, 1987 a new plan and disclosure statement were also filed. Based upon the documents of record, previous hearings in this case, and the January 20, 1987 hearing, the relevant facts may be stated as follows:

1.

The Debtors are primarily engaged in grain farming but are also involved in a real estate business. The Debtors' August 20, 1985 amended disclosure statement projected net future income of $48,339.00 per year. However, at the November 3, 1986 dismissal hearing, Lynn Langseth testified that he anticipated a $1,000.00 net profit for 1986 after paying operating expenses and living expenses. The Debtors apparently did not fair any better in 1985, as approximately $6,000.00 remains due to the National Bank of Harvey on a 1985 operating loan. The failure of the Debtors to generate any excess cash flow during the pendency of the previous Chapter 11 case, which lasted in excess of two years, was explained in part by the fact that the Debtors' efforts were hampered by drought in their area during 1985 and 1986.

The following is a summary of the Debtors' actual income and expenses for the years 1983, 1984, and 1985, as taken from the Debtors' new disclosure statement filed on January 20, 1987, in connection with the present Chapter 11 case. 1986 expenses were not included. Also included is an estimated farm income and expense schedule for future years. This is summarized as follows:

|  | 1983 | 1984 | 1985 | Future Annual Projection |
|---|---|---|---|---|
| Income | $56,162.00 | $59,048.00 | $43,585.00 | $62,250.00 |
| Expenses | $46,084.00 | $47,829.00 | $31,858.00 | $25,575.00 |
| Net Farming Income | $10,078.00 | $11,219.00 | $11,717.00 | $36,675.00 |

The above summary does not include any expenses for depreciation or interest and debt service. The excess income for 1984 and 1985 was apparently used for family living, as the Debtors were unable to pay back their operating loan for 1985, which would have further decreased the net income for that year. The Debtors' gross farm income projected for the years 1987 and beyond is $62,250.00, a gross income which the Debtors have not realized since 1982. Furthermore, this income projection is based upon approximately one hundred less tillable crop acres than the Debtors were operating during the previous Chapter 11 case.

The Debtors projected net income from the farming operation in future years is $36,675.00. From this amount, the Debtors subtract family living expenses of $18,000.00 which leaves a projected net income of $18,675.00. The payments which the Debtors propose in their present plan of reorganization filed in this case exclusive of priority and administrative claims total $24,683.80 per year. By subtracting $24,683.80 from the net available income from the farming operation of $18,675.00, the court arrives at a $6,008.00 shortfall based upon the projections of the Debtors. The shortfall is even greater when priority and administrative farm payments are included. However, the Debtors also project an $18,000.00 income from their real estate business which would eliminate the shortfall. Lynn Langseth, a realtor, has recently attended a week long advanced real estate seminar in Minneapolis, and believes that real estate income in the amount of $18,000.00 per year can be realized. However, he also had these hopes under the last bankruptcy proceeding but no evidence has been introduced to substantiate the estimation of real estate income. Lynn Langseth

testified at the November 3rd dismissal hearing that the real estate business was very slow. Based upon the records before it, the court is unable to conclude that the Debtors have received any income from real estate services during the past couple of years. But for the Debtors' projected real estate income of $18,000.00, the Debtors' plan would not cash flow, based upon the Debtors' own projections. Furthermore, the court is of the opinion that the Debtors' gross income projection from the farming operation of $62,250.00 is optimistic and unrealistic, based upon the Debtors' previous gross income history dating back to 1983.

2.

Section 1112 of the Bankruptcy Code gives a court the authority to dismiss a case under this chapter for cause including—

(1) Continuing loss to or diminution of the estate in absence of a reasonable likelihood of rehabilitation;

(2) Inability to effectuate a plan;

(3) Unreasonable delay by the debtor that is prejudicial to creditors;

(4) Failure to propose a plan under section 1121 of this title within any time fixed by the court;

\* \* \* \* \* \*

11 U.S.C. § 1112(b).

██ Cause for dismissal is not limited to the specifically enumerated examples set forth in section 1112, but rather is a matter of discretion with the bankruptcy court. *In re Asbridge,* 61 B.R. 97, 101 (Bankr.D. N.D.1986). The absence of good faith on the part of a debtor in filing a petition is sufficient cause for dismissal as well. *Id.,* at 102. In the instant case, the Debtors filed their petition on the eve of a foreclosure sale. The petition was also filed approximately one month after the Debtors' previous Chapter 11 case was involuntarily dismissed. Although the petition was filed on the eve of a foreclosure, the court is of the belief that the Debtors did not file their petition for the sole purpose of delaying the foreclosure sale and frus-

trating FLB's efforts to enforce their rights. The Debtors have vigorously attempted to expeditiously move their present Chapter 11 case along. The Debtors filed written responses to both motions to dismiss, and on the morning of the hearing, filed a plan of reorganization and a disclosure statement. The Debtors believe the present plan will work. However, not only is the Debtors' intent considered in determining that good faith exists in the new filing of a Chapter 11 following a previous dismissal, but an operational feasibility must also exist. *Id.,* at 102.

██ Regardless of whether this court determines that the present petition has not been filed in good faith or whether this court determines that there has been a continuing loss to the estate and an absence of a reasonable likelihood of rehabilitation, the realities of the Debtors' financial situation must be faced. They have had protection under the Bankruptcy Code for over two years, during which time they filed two disclosure statements and plans, but were unable to obtain confirmation of a feasible plan of reorganization despite the able assistance of very capable bankruptcy counsel. The Debtors sincerely believe that their new proposed plan of reorganization is feasible and that the projections can be met. However, the court does not believe that the Debtors' plan now being proposed is feasible and does not believe that the Debtors will be able to effectuate a successful reorganization. Income and expense projections have to be rooted in objective fact and not conjecture or speculation. In the instant case, the Debtors' projections are based upon ideal circumstances and optimum projections, not only in the farming operation but concerning the fledgling real estate business as well. The Debtors' operational history over the past few years is indicative of the fact that the economy, particularly in the rural and agricultural areas, is not as strong as it was five or six years ago, and prices received for commodities are not as high. The Debtors' disclosure statement projections simply do not reflect this fact.

This court has traditionally gone the extra mile in allowing agricultural debtors an extensive amount of time to reorganize. In many jurisdictions one year is the maximum amount of time farm debtors are allowed to operate under the protection of the Bankruptcy Code without obtaining confirmation of a plan. This court believes that farm debtors are entitled to an opportunity to reorganize, and does not lightly dismiss farm cases. Nevertheless, financial realities must be recognized. The Bankruptcy Code does not provide perpetual protection for debtors. Bankruptcy simply provides debtors with a breathing spell during which time they can re-evaluate their situation, make changes in management and operations, and attempt to reorganize on a more efficient and feasible basis. Bankruptcy courts cannot control the weather, cannot control commodity prices, cannot control interest rates, and cannot be oblivious to the substantial harm resulting to creditors if a debtor is allowed to remain in bankruptcy for an excessive amount of time. In the instant case, the Debtors' cash flow potential has not changed dramatically from that over the past two or three years. The only changed circumstance in this case as compared to the old Chapter 11 case is that the Debtors are not bound by a valuation stipulation which they entered into with FmHA. While the valuation stipulation was perhaps an impediment to the Debtors were they to reach the point of a plan confirmation, the valuation stipulation had absolutely no effect on the Debtors' cash flow during the pendency of the Chapter 11 case. During the past two and one-half years, the Debtors did not make any interest, adequate protection, or principal payments to creditors owed money as of the date of filing of the original petition. The Debtors' only expenses have been what are normally considered to be operating expenses, and expenses for family living. Nevertheless, during this time period, the Debtors were unable to even pay back all of their operating loans. The Debtors do not have any cash available at the present time, and have not made any payments to pre-petition creditors. For the Debtors to anticipate having in excess of $24,683.80 available on an annual basis for debt service and payment is not substantiated by the Debtors' past economic history, even after making an adjustment for the recent drought conditions. While the Debtors appear to be intelligent and capable individuals, their operation is incapable of being reorganized as now proposed. The court remains of the opinion that they are unable to effectuate a reorganization and continual delay would further prejudice creditors who have already seen a significant erosion in the value of their collateral. Accordingly, and for the reasons stated herein, the Debtors' Chapter 11 bankruptcy petition filed December 12, 1986 is DISMISSED.

SO ORDERED.