In re Beth WENTWORTH, Debtor.

Bankruptcy No. 87–06024.

United States Bankruptcy Court,
D. North Dakota.

Jan. 25, 1988.

James Coles, Bismarck, N.D., for debtor.

Jon Brakke, Fargo, N.D., for Sargent County Bank.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the court is a Motion to Dismiss filed by the Sargent County Bank (Bank) on December 3, 1987, by which the Bank seeks dismissal of the Debtor's pending Chapter 11 case. As a basis for its motion the Bank, relying upon section 1112(b) of the United States Bankruptcy Code, charges that the petition was filed in bad faith and without any reasonable prospects of reorganization. The motion is resisted. The hearing was held on January 5, 1988.

1.

■ The Debtor, Beth Wentworth, while actively engaged in a joint farming operation with her husband John, filed a separate bankruptcy petition under Chapter 11 by which she intends on reorganizing. Fundamental to any Chapter 11 is the object of the repossession effort. Chapter 11 is available only to persons engaged in business. *Wamsganz v. Boatmen's Bank of DeSoto*, 804 F.2d 503 (8th Cir.1986). Beth's petition, filed on November 24, 1987, lists her business as farming. Therefore, if Chapter 11 is to be available to her as a means of reorganizing, the object of that effort must be a farming operation.

From the petition schedules and the evidence produced at the hearing it appears that Beth and her husband, John, conduct a joint farming/ranching operation under the name of "Wentworth Ranch". The ranch is comprised of 960 acres being purchased by Beth individually on a contract for deed and 160 acres owned by John individually. In addition to this acreage John rents another eight quarters. Beth and John jointly own farm equipment, supplies and live-

stock. They maintain a joint farm account at the Bank under the name "Wentworth Ranch" and according to Beth, she and John both issue checks drawn on this account for farm/ranch purposes. Beth also maintains a personal checking account at the bank which is used for purely household purposes.

According to Beth, John cash rents the 960 acres from her and in addition she is paid a portion of the livestock profits for work performed on the farm. This work consists of cooking for hired help, bookkeeping, running for parts and helping with the cattle. While professing to receive income from these sources, Beth's statement of current income depicts a monthly income from farming of only $322.70. There are no cash rent records in existence and the couple's income tax returns do not reflect any cash rent income attributable to Beth. In fact, their joint tax returns list John as a sole proprietor.

Despite Beth's present assertion of maintaining a ranching operation separate from John's, over the years they have never held themselves out to be anything but a joint family farming/ranching operation. Beth and John borrowed money from the Bank evidenced by a series of 15 promissory notes of which 4 are in evidence. Two of these are captioned "Wentworth, John d/b/a Wentworth Ranch" but signed solely by Beth Wentworth individually below the typed legend, "Wentworth Ranch". One is in the name of "Wentworth Ranch, John and Beth Wentworth" but is also signed solely by Beth again under the typed name "Wentworth Ranch". One is in the name of "Wentworth, Beth" and is signed by her without any additional notation. The first three notes are for seed, fertilizer, machinery and living expenses, while the last is for operating expenses. Beth takes the position that she is liable only on those notes she individually signed, an obligation which she lists in her petition schedules as $12,530.00. The total indebtedness owing to the Bank in consequence of the 15 notes is in excess of $300,000.00.

To secure in part these various obligations Beth and John granted the Bank a security interest in all farm equipment, all livestock, all supplies, feed, seed, fertilizer and all proceeds and products thereof. This interest is evidenced by an agreement dated July 6, 1982, and signed by both Beth and John. The Bank's security interest was duly perfected.

As a consequence of note defaults, the Bank undertook to repossess its collateral and on July 14, 1987 obtained, after hearing, an order from the North Dakota District Court for Sargent County directing Beth and John to immediately turnover to the Bank all existing livestock, machinery and proceeds from the sale of crops and livestock as well as a 1986 government crop payment. The Bank was successful in recovering several items of machinery and checks totalling $130,000.00 but was stymied in any further efforts to take control of the balance of the couple's machinery and livestock by virtue of Beth's Chapter 11 filing. Beth admitted the reason she filed the petition was to stop the Bank from repossessing the livestock and machinery and that the petition was filed on the very day the Bank was going to commence repossession of this property.

In addition to the indebtedness to the Bank, Beth lists two other secured creditors, GMAC and the contract for deed vendors, both of whom are current. Only two unsecured creditors are listed in the aggregate of $175.00. Curiously, in her list of monthly expenses there is no amount shown for payments on the contract for deed although the remaining balance is $206,535.00. Nor is anything shown for payments to the Bank on that portion of the obligation she believes is hers. Total monthly income is listed on her schedules at $386.00 and total monthly expenses are listed at $162.00.

2.

■ Section 1112(b) of the Bankruptcy Code, in pertinent part, provides:

   ... On request of a party in interest, and after notice and hearing, the court ... may dismiss a case under this chapter, ... for cause, including—

(1) continuing loss to or dimunition of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by a debtor that is prejudicial to creditors; .... 11 U.S.C. § 1112(b).

The list of grounds for dismissal contained in section 1112(b) is not exclusive and the court may consider all of the circumstances of the Debtor's situation to reach an equitable result. *See In re Langseth*, 70 B.R. 274, 277 (Bankr.D.N.D.1987); *In re Rott*, 49 B.R. 697, 698 (Bankr.D.N.D.1985). Section 1112(b) does not specify a "bad faith" ground for dismissal. Rather, the courts have created the bad faith dismissal through interpretation of the unrestricted term, "for cause" which appears in section 1112(b). *Cf. In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11 Cir.1984). In *Albany Partners* the United States Court of Appeals for the Eleventh Circuit noted:

> In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions. Particularly where there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of a petition for lack of good faith is appropriate. [citations omitted]. *Id.*

Over time a number of factual patterns indicative of bad faith have recurred with such frequency that they have been distilled into a list. The circumstances which courts have held to constitute bad faith, and therefore cause for dismissal include the following:

1. The debtor has few or no unsecured creditors;

2. There has been a previous bankruptcy petition by the debtor or a related entity;

3. The pre-petition conduct of the debtor has been improper;

4. The petition effectively allows the debtor to evade court orders;

5. There are few debts to non-moving creditors;

6. The petition was filed on the eve of foreclosure;

7. The foreclosed property is the sole or major asset of the debtor;

8. The debtor has no ongoing business or employees;

9. There is no possibility of reorganization;

10. The debtor's income is not sufficient to operate;

11. There was no pressure from non-moving creditors;

12. Reorganization essentially involves the resolution of a two party dispute;

13. A corporate debtor was formed and received title to its major assets immediately before the petition;

14. The debtor filed solely to create the automatic stay.

*See In re Northwest Place, Ltd.*, 73 B.R. 978, 981 (Bankr.N.D.Ga.1978); *see also In re Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986) (describing recurring fact patterns indicative of bad faith).

The foregoing indicia of bad faith overlap each other and include the section 1112(b)(2) enumerated ground of inability to effectuate a plan. The common thread running through any Chapter 11 is that it has been filed with the aim and purpose of effectively reorganizing and that an effective reorganization is possible.

In the instant case Beth professes to be intent upon reorganization—a reorganization which can only mean the ranch. How this end can be achieved given the facts is unclear. She owns 960 acres on which she owes over $200,000.00 and from which she claims to derive cash rent income—income which is not reflected in her schedules. Although the nature of this land is unknown, if it is truly the subject of a cash rent lease it must certainly generate more than $322.00 per month. At this rate of monthly income the land would be renting for $4.00 per acre on an annual basis. This sum would not be enough even to service the contract for deed obligation let

alone repayment of that portion of the Bank obligation Beth believes is hers, plus whatever other ranching expenses must exist. This leads to the rather obvious conclusion that the true expenses of carrying on the Wentworth ranching operation are not reflected in Beth's petition schedules and that the expenses, including repayment of capital debt are being borne by the couple's collective ranch income—income which Beth apparently now believes is solely her husbands. Without including the property allegedly belonging to her husband, Beth really has no ongoing ranching operation at all because all of her land is cash rented to her husband. Without land it is difficult for this court to imagine how one can conduct a ranching operation.

Under her own version of the property arrangement, she has an undivided one-half interest in two of the essential elements of a ongoing ranching operation. All machinery and livestock are jointly owned but would obviously be necessary to any true reorganization of the ranch. It would be impossible for Beth to continue ranching or farming without use of John's one-half interest in these assets, an interest which presently is indivisible from hers but which she is not including as an estate asset. Furthermore, inasmuch as she is claiming a one-half interest in all of the machinery and livestock, John would doubtless expect her to share in one-half of the maintenance and operational expenses. These expenses as before mentioned are nowhere reflected in Beth's schedules and apparently she is counting on John to cover them. If hers is a truly separate operation from that of her husband's there can be no assurance that he will cover Beth's operational expenses. Moreover, all machinery and livestock are subject to the Bank's security interest irrespective of whether Beth, John or both signed the underlying notes. *See In re Asbridge,* 45 B.R. 564, 567 (Bankr.D.N.D. 1984). The fact of the Bank's blanket security interest creates several problems. First, Beth is liable to protect the Bank's interest in the collateral to the extent the Bank incurrs a decrease in the value of its interest. Arriving at a calculation of adequate protection would, of necessity, involve the one-half interest purportedly owned by John. Given Beth's rather meager monthly income it is impossible to understand just how she would even begin to cover any adequate protection payment unless the source were John. Secondly, John remains wholly liable on the obligation to the Bank and the Bank's efforts to repossess property belonging to him as co-debtor is not automatically stayed by section 362. Because he pledged all machinery and livestock as collateral for the debt, that property, which is so far indistinguishable from Beth's may be subject to repossession. It is entirely foreseeable that the parties, faced with a motion for relief from stay or a state court repossession action, would be very shortly forced to formally divide the machinery and equipment between them. For Beth this is a problem because the property essential to her reorganization may well be subject to repossession for acts outside her control. This contingency is too great to be dealt with by a plan, which affords treatment of only part of the obligations for which all of the assets are pledged.

As the parties' relationship has been characterized by Beth, it gives rise to a cross-collateralization between the Debtor's estate and a non-debtor party which under any plan would force the Bank to allow someone outside the Debtor's estate to use its collateral because the owner of an one-half interest in the collateral is under the protection of the bankruptcy court. It would be manifestly inequitable, for example, to require the Bank to lengthen the repayment period on its loan pursuant to a plan of reorganization when neither the Bank, the Debtor, nor the court have complete control over the use of the collateral.

Given the assets available to Beth and her interdependence with John on the same assets necessary for the continued operation of the partners' ranch, it is apparent that one cannot reorganize without the assets of the other. Beth has never operated independent of John and neither of them can at this time reorganize a viable operation ignorant of the fact that theirs is a joint ranching operation. From the facts

and circumstances of this case the court concludes there is no reasonable likelihood that Beth has an operation independent of John which can maintain viability. This conclusion along with the fact that the machinery is depreciating and diminishing the Debtor's estate, are sufficient grounds for dismissal under section 1112(b)(1) and (2).

Beyond the enumerated grounds for dismissal, however, the facts and circumstances are also sufficient to establish bad faith. The facts that cause the court to believe that bad faith exists in connection with Beth's independent Chapter 11 filing are the following: she has only two creditors holding nominal amounts of unsecured debt both of which are current; the only other secured creditors aside from the Bank are current; she filed her petition on the day the Bank was scheduled to repossess its collateral and has admitted that the sole purpose of the filing was to avoid the state court order allowing the Bank to repossess the machinery and livestock; her monthly income is completely insufficient with which to operate any type of a ranching operation; the reorganization essentially involves a two party dispute between Beth and the Bank.

In this case the evidence is overwhelming that the Debtor has not filed her petition in good faith with an honest intent of reorganizing an *ongoing* business, but rather, has filed to frustrate and delay a creditor's attempt to repossess its collateral. This filing is nothing more than a sham.

Accordingly, and for the reasons stated, the Chapter 11 petition filed by Beth Wentworth on November 24, 1987 is in all things DISMISSED.

SO ORDERED.