**In re Benjamin A. COOK, Debtor.**

**Bankruptcy No. 89–40109–JFQ.**

United States Bankruptcy Court,
D. Massachussetts.

April 25, 1989.

Stephen Wald, Craig and Macauley, Federal Reserve Plaza, Boston, Mass., for Safety Fund Nat. Bank.

David Nickless, Nickless & Phillips, Fitchburg, Mass., for Benjamin A. Cook, debtor.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

First Safety Fund National Bank (the "Bank") moves to dismiss this Chapter 11 case on the ground that the Debtor, Benjamin A. Cook, is an individual without business operations. The Debtor is the treasurer, a director and the holder of ten percent of the stock of Advance Coatings Company (the "Company"). In 1982 he unconditionally guaranteed the Company's loan indebtedness to the Bank, subsequently pledging with the Bank $200,000 in face value of bonds as security for the guaranty. He has also guaranteed $100,000 of the Company's debt owed a supplier. Its debt of about $1.2 million being in default, the Bank in 1988 requested the Debtor to provide further security for his guaranty in the form of mortgages on winter and summer residences. The Debtor declined, and the Bank brought suit in state court seeking judgment, attachments and a declaration that the Debtor had transferred his summer home into a family trust in fraud of creditors. Shortly thereafter both the Debtor and the Company filed Chapter 11 petitions.

The Debtor's compensation from the Company is his principal source of income; he engages in no business on his own behalf. His schedules on file in this Court disclose no real estate ownership. Personal property is listed at $233,750, which includes municipal bonds of $210,000, a mortgage of $7,250 and bank accounts of $14,000, plus personal effects. His ten percent interest in the Company and thirty percent interest in another corporation are listed as valueless. The scheduled debt consists of the two guaranteed Company debts totaling $1,300,000 and mortgage debt on the two homes totaling $415,000.

We should dismiss this petition, says the Bank, because Chapter 11 is designed exclusively for the reorganization of a business. The statute provides:

(d) Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker, and a railroad may be a debtor under chapter 11 of this title. 11 U.S.C.S. § 109(d) (Law.Co–op.1986 & Supp.1988).

A "person" is defined in § 101(35) to include an "individual, partnership, and corporation ..." A "person" who is not a railroad, an insurance company or a financial institution may be a debtor under Chapter 7. § 109(b). The eligibility standards for Chapter 13 are quite different. Section 109(e) requires the Chapter 13 debtor to be an "individual" with "regular income" who has unsecured debts of less than $100,000 and secured debts of less than $350,000. Congress therefore displayed an ability to impose quite restrictive eligibility standards, and it did so for Chapter 13.

The legislative history is also revealing. The House Report states:

Chapter 11, Reorganization, is primarily designed for businesses, but permits individuals to use the chapter. The procedures of chapter 11, however, are sufficiently burdensome that their use will only make sense in the business context, and not in the consumer context. H.R. Report No. 95–595, 95th Cong., 1st Sess. 6 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5968.

The Senate Report contains virtually identical language. S.Rep. No. 95–989, 95th Cong. 2d Sess. 3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5789.

The conclusion seems obvious. Congress intended an individual not engaged in business to be eligible for Chapter 11, while at the same time assuming that such an individual would be an infrequent Chapter 11 petitioner because of the complexity of its procedure which was "primarily" designed for business. *Gonzales v. Parks*, 830 F.2d 1033, 1034, n. 1 (9th Cir.1987) (dictum); *In re Moog*, 774 F.2d 1073 (11th Cir.1985);

*Grundy Nat'l Bank v. Shortt,* 80 B.R. 802 (W.D.Va.1987); *Warner v. Universal Guardian Corp. (In re Warner),* 30 B.R. 528 (Bankr. 9th Cir.1983); *In re McStay,* 82 B.R. 763 (Bankr.E.D.Pa.1988); *In re Markunes,* 78 B.R. 875 (Bankr.S.D.Ohio 1987); *In re Greene,* 57 B.R. 272 (Bankr.S.D.N.Y. 1986); *In re Mastroeni,* 56 B.R. 456 (Bankr.S.D.N.Y.1985); *In re Gregory,* 39 B.R. 405 (Bankr.M.D.Tenn.1984). The writers agree. *See* Herbert, *Consumer Chapter 11 Proceedings: Abuse or Alternative?* 91 Com.L.J. 234 (1986); Morris, *Substantive Consumer Bankruptcy Reform in the Bankruptcy Amendments Act of 1984,* 27 Wm. & Mary L.Rev. 91 (1985–1986). *See also* 2 *Collier on Bankruptcy* ¶ 109.04 at 109–20 (15th ed. 1989).

Other decisions view the statutory framework differently. *See Wamsganz v. Boatmen's Bank of DeSoto,* 804 F.2d 503, 505 (8th Cir.1986) (petition of individual consumer dismissed: "legislative history ... taken as a whole, shows that Congress meant for Chapter 11 to be available to businesses and persons engaged in businesses ..."); *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985) (dismissal warranted where sole asset was spurious fraudulent transfer claim; a potentially viable business viewed as the *raison d'etre* of Chapter 11—requirement of a business deemed "inherent in the statute and clearly implied in 11 U.S.C. § 112(b)" authorizing dismissal for inability to effectuate a "plan"); *In re Martin,* 51 B.R. 490 (Bankr.M.D.Fla.1985) (earth-moving operation on debtor's real estate held insufficient business operations); *In re Ponn Realty Trust,* 4 B.R. 226 (Bankr.D.Mass.1980) (trust owning home in which beneficiary resides ineligible for Chapter 11 because of chapter's business orientation). Some courts requiring dismissal do so at least in part on the theory that inability to reorganize a business permeates the filing with bad faith and is therefore an unspecified "cause" for dismissal under § 1112(b). *E.G., In re Golden Ocala Partnership,* 50 B.R. 552 (Bankr.M.D.Fla.1985) (debtor a partnership whose sole asset was cause of action for fraudulent transfer); *In re Harvey Probber, Inc.,* 44 B.R. 647 (Bankr.D.

Mass.1984) (debtors the parent and landlord of co-debtor manufacturing company); *In re Mogul,* 17 B.R. 680 (Bankr.M.D.Fla. 1982) (debtor an individual without income who allegedly made fraudulent transfers).

The somewhat insidious growth of a good faith filing requirement has been traced elsewhere. *See In re The Bible Speaks,* 65 B.R. 415 (Bankr.D.Mass.1986); *In re Victory Constr. Co., Inc.,* 9 B.R. 549 (Bankr.C.D.Cal.1981); Ordin, *The Good Faith Principle in the Bankruptcy Code: A Case Study,* 38 Bus.Law. 1795 (1983). Analysis of eligibility requisites under the rubric of a good faith standard adds nothing. "... [T]he term covers too many different kinds of conduct, in too many different situations. Indeed, one is tempted to say that it is not a category at all, but merely a perjorative [sic] phrase, functioning at such a high level of abstraction that one can scarcely discern what might be underneath it." *In re Victory Constr. Co., Inc.,* 42 B.R. 145, 149 (Bankr.C.D.Cal.1984). When a Chapter 11 petition is dismissed as a bad faith filing because the petitioner does not operate a business, what is "underneath" the analysis is the court's view of who should or should not be eligible to file, and in such dismissals a court at times makes no pretense at interpreting the governing eligibility provisions. Whether imposing a good faith filing requirement or interpreting the statutory filing standards, a court must be careful not to arrogate to itself the functions of the legislature. Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527 (1947). Congress could have denied Chapter 11 relief to those who do not operate a business, and it can be argued that it should have. But these considerations are not the province of a court. Both the statute and its legislative history make it plain that Congress did not do so. A nonbusiness entity with little disposable income is certainly able to consummate a Chapter 11 plan if permitted to file, in light of the permissibility of a liquidating plan. *See* 11 U.S.C.S. § 1123(a)(5)(D) (Law.Co–op.1986 & Supp.1988). Dismissal should of course be ordered if the debtor is unable to effectu-

ate a plan or unreasonably delays the process to the prejudice of creditors. 11 U.S.C.S. § 1112(b)(2) and (3) (Law.Co-op.1986 & Supp.1988). These considerations, however, are based upon individual circumstances. Dismissal should not be the product of a court's view concerning what type of entity is a proper Chapter 11 Debtor, or mere suspicion of the debtor's inability to consummate a plan without the debtor being afforded the opportunity to meet that issue head on. *Connell v. Coastal Cable T.V., Inc. (In re Coastal Cable T.V., Inc.),* 709 F.2d 762 (1st Cir.1983) does not hold otherwise. The First Circuit there remanded the case for determination of the appropriateness of dismissal, questioning whether the debtor had *any* debts and concerned with possible fraudulent conduct toward stockholders. That is not our situation. The Debtor's indebtedness on his guarantees is quite real, and there is no allegation of fraud.

Although under § 109(e) the amount of his debt disqualifies the Debtor for Chapter 13 relief, we do not allow him to stay in Chapter 11 for that reason. Eligibility under each chapter should be considered independently. Nor do we base our decision on the substantial relationship of his debt to that of the Company, or on the possibility that he can coordinate his plan with the Company's. The Debtor is eligible to proceed on his own account, subject to the statutory grounds for dismissal and this Court's obligation to see that the case moves expeditiously. The Bank is not prejudiced by being unable to prosecute its fraudulent transfer claim in state court. If that claim has any merit, it should be brought here by an estate representative for the benefit of all creditors. The Bank is free to seek appointment as that representative.

The motion is DENIED.