**In re Stephanie BRYAN, a/k/a E. Woolley Trust, a/k/a Imani Trust, a/k/a L & O Trust, a/k/a Locksley Jr. Trust, Debtor.**

**Bankruptcy No. 89–11274–JNG.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 30, 1989.

Joseph Baldiga, Goodwin, Procter & Hoar, Boston, Mass., for movant Mortgage Investors Corp.

Joseph A. Gordon, Kline, Gordon & Ginn, Boston, Mass., for Boston Bank of Commerce.

Leon Aronson, Aronson & Goldstein, Quincy, Mass., for debtor.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

### INTRODUCTION

The matters before the Court are motions to dismiss filed by Mortgage Investors Corporation ("MIC") and Boston Bank of Commerce (the "Bank"). MIC filed a "Motion to Dismiss or, in the Alternative, for Relief from Automatic Stay or for Adequate Protection, and Request for Expedited Determination" on May 26, 1989. The Bank previously had filed, on May 23, 1989, two motions each entitled "Motion for Relief from Automatic Stay and for Authority to Foreclose, or in the Alternative for Dismissal or for Adequate Protection." The Bank's two motions are identical except that one relates to real estate identified as Unit 1,105 Cedar Street in Roxbury, Massachusetts, and the other relates to real estate identified as Unit 1–B, 58 Bartlett Street and Units 1–A through 3–A, 60 Bartlett Street in Roxbury. MIC's motion pertain to the same real property. The Court allowed MIC and the Bank relief from the automatic stay at an evidentiary hearing held on July 20, 1989 and took under advisement the alternative motions to dismiss. The Debtor did not contest the allowance of the relief from stay motions, admitting a lack of equity in the subject properties and an inability to make adequate protection payments.

### BACKGROUND

The Debtor, Stephanie Bryan (the "Debtor"), filed a Chapter 11 petition on May 10, 1989, approximately one week before foreclosure sales that were scheduled by the Bank and MIC. The Debtor, in her petition, claims ownership of beneficial interests in four trusts: the E. Woolley Trust, the Imani Trust, the L & O Trust and the Locksley Jr. Trust. According to the Debtor's Schedules, the E. Woolley Trust owns property at 58–60 Bartlett Street and 105 Cedar Street in Roxbury; the Imani Trust owns property at 4 Thwing Street in Roxbury, the L & O Trust owns property at 404–406 Blue Hill Avenue in Mattapan, and at 131 Cedar Street and 81 Highland Avenue in Roxbury; and the Locksley Jr. Trust owns 25 acres of land in Bethlehem, New Hampshire.

At the July 20, 1989 hearing, the Debtor stipulated as to the admissibility of certain

facts, 54 exhibits, including her bankruptcy petition, and extended excerpts from transcripts of her deposition, as well as that of her husband, Locksley Bryan, and a Chapter 13 debtor before this Court, Odessa Bryant, who claims an ownership interest in property located at 33 Mariposa Street, Mattapan, Massachusetts, that was conveyed to the Debtor's husband and Odessa Bryant as tenants by the entirety in November of 1977.

Because the Bank and MIC have first and second mortgage positions, respectively, on the 105 Cedar Street and 58–60 Bartlett Street properties, the parties focused on those properties in their pleadings. The properties are owned by Locksley Bryan, Trustee of the E. Woolley Trust. Locksley Bryan, individually, conveyed the properties to the E. Woolley Trust in June of 1986 for nominal consideration. The first mortgages on the properties were given to the Bank to secure promissory notes in the principal amounts of $300,000 and $200,-000. The notes were dated March 17, 1986 and October 10, 1986, respectively, and were given by Locksley Bryan, once in an individual capacity and once in his capacity as trustee. Both notes have been in default for an extended period, and, as of July 20, 1989, the Bank's principal, accrued interest, late charges, appraisal fees, legal fees and auctioneers' fees totalled approximately $500,000.

Locksley Bryan also entered into a lending relationship with MIC. In June of 1987, he executed a Collateral Pool Line of Credit and Security Agreement pursuant to which MIC agreed to lend Locksley Bryan up to $750,000. Accordingly, Locksley Bryan executed five promissory notes in the principal amounts of $100,000, $33,000, $119,900, $42,000 and $195,000 secured by cross-collateralized and cross-defaulted second mortgages on the Bartlett Street and 105 Cedar Street properties, a conditional assignment of rents and a guaranty. The guaranty was signed by Stephanie Bryan and by Locksley Bryan, individually, and as the trustee of both the E. Woolley Trust and the Hugh Trust. At the time of the evidentiary hearing, the MIC notes were in default, and MIC was owed approximately $400,000 with respect to both properties.

Under section 362(d) of the Bankruptcy Code a moving party can prevail if it establishes "cause," which may include a lack of adequate protection, or if it establishes that the debtor has no equity in the property and such property is not necessary to an effective reorganization. Since the Debtor admitted an inability to make a meaningful offer of adequate protection at the July 20, 1989 hearing, MIC and the Bank were clearly entitled to relief from stay under section 362(d)(1).

At the July 20, 1989 evidentiary hearing, Debtor's counsel alluded to the possibility of a $1 million refinancing. However, the prospect of obtaining such a loan in view of the value of the properties held by the four trusts listed in the Debtor's petition and present market conditions was so bleak that Debtor's counsel conceded that the secured debt exceeded the value of the Bartlett and Cedar Street properties. Coupled with this admission, a review of the entire record reveals that the Debtor failed to argue that the property was necessary to an effective reorganization for the simple reason that without a significant refinancing commitment to Locksley Bryan, a non-debtor, there was no hope of reorganization at all. As only one of several purported beneficiaries of the trusts in question, the Debtor utterly failed to present any indication of how she could orchestrate the refinancing of the real estate involved in this case. Therefore, the Bank and MIC also were entitled to relief from stay under section 362(d)(2).

Although MIC and the Bank prevailed with respect to obtaining authority to proceed with their foreclosure sales, they continued to press their dismissal motions. MIC, in particular, argued on behalf of dismissal because the Debtor guaranteed payment of her husband's obligations.

MIC, in its pleadings, set forth a number of reasons why it believes the Debtor's petition should be dismissed. In the first instance, it argued that the E. Woolley Trust, the Imani Trust and the L & O Trust, all of which have similar provisions,

are illusory because 1) no schedules of beneficiaries were executed at the time the trusts were created or were produced by the Debtor or her husband; 2) Locksley Bryan as trustee retains absolute discretion and power with respect to the corpus and principal of the trusts; and 3) Locksley Bryan as trustee has full power to amend, invade, terminate or sell the whole or any part of the trusts' property at any time.

For example, the E. Woolley Trust, the Imani Trust and the L & O Trust contain the following relevant provisions:

Article III. "The Trustee shall have absolute discretion as to how, when and in what manner the corpus or principal of this trust shall be invested and reinvested with full power and discretion as if the Trustee was the absolute owner thereof; and generally may do all things in relation to the trust fund which he would do as if he owned the property outright and free and clear of all trusts."

Article IV. "... the Trustee shall have full power, authority and discretion, at any time, and from time to time, to (1) Amend this Declaration of Trust at any time; ... (3) Sign, execute, acknowledge and demand all necessary and proper contracts, deeds, mortgages, instruments, documents and writings, whatsoever, to do all acts necessary, proper or convenient for the purposes of carrying out any of the powers conferred upon the Trustee;...."

Article V. "The Trustee hereby expressly reserves and retains the right, at any time, while the trust is in force, that if any financial emergency arises in his personal life, such that his present income is insufficient for his care and support, he may at any time withdraw such sum or sums out of the corpus of this trust to enable him to meet such emergency."

Article VIII. "The Trustee shall have the right to resign as a Trustee hereunder at any time in his discretion with full and absolute authority to constitute and appoint in his stead any person over twenty-one (21) years of age."

Article X. "The trust hereunder may be terminated by the Trustee or a Successor Trustee.... The Trustee may sell the whole or any part of the trust property for purposes of distribution on or after termination of this trust...."

The trust instruments indicate that the beneficiaries of the trust are listed on a schedule held by the trustee. A Notice of Deposition of Locksley Bryan filed with this Court on June 30, 1989 contains a request for the production of schedules of beneficial interests for the four trusts identified in the Debtor's schedules. Locksley Bryan failed to produce those documents, and they were not introduced as exhibits by the Debtor during the evidentiary hearing. Both the Debtor and her husband testified as to whom they believed the beneficiaries of the trusts to be. Their deposition testimony was inconsistent, however. In view of the fact that both deponents did not dispute the actual existence of separate schedules, counsel to the Bank objected to their testimony on the basis of the Best Evidence Rule. Although all parties agreed the accuracy of that belief was never substantiated by the Debtor during the course of the evidentiary hearing.

MIC also noted that, although the Debtor in her statement of affairs, lists her occupation as that of real property manager at Bryan Realty, One Longfellow Place, Boston, in actuality she is employed as an office manager at her husband's law firm for which she receives compensation "depend[ing] upon how well we do in the business." In her deposition, the Debtor admitted that Bryan Realty has been defunct for all practical purposes for approximately one year. Accordingly, MIC argued that the Debtor has no business to reorganize.

MIC also pointed to the fact that, compared to the Debtor's secured debt of approximately $1.461 million, her unsecured debt to three creditors, which totals $2,300, is insignificant (i.e. .16%). MIC emphasized the Debtor's deposition testimony in which she admitted that the filing was to avoid the impending foreclosures sales and not to deal with her modest unsecured debt. In MIC's view, this conduct together with the other admissions demonstrate that the Debtor's purpose in filing Chapter 11 was

simply to frustrate the legitimate efforts of MIC to foreclose.

Finally, MIC pointed to the filing of a Chapter 13 petition by Odessa Bryant. Odessa Bryant testified that she was pressured into filing a Chapter 13 petition by Locksley Bryan as a means of saving her home at 33 Maraposa Street, which she owns as a tenant-in-common with Locksley Bryan.[1] She indicated that she originally thought Locksley Bryan was going to file but his occupation as an attorney made such a decision ill-advised. Thus, MIC suggested that Locksley Bryan is the individual who should be before the Court, not Odessa Bryant or Stephanie Bryan.

## DISCUSSION

MIC and the Bank urge the Court to dismiss the Debtor's Chapter 11 petition because in their view it was not filed in good faith. Section 1112 of the Bankruptcy Code governs conversion or dismissal of Chapter 11 cases. It provides in relevant part:

... the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b). As numerous courts have noted, "Chapter 11 does not expressly condition the right to file or maintain a proceeding on the "good faith" of the debtor at the time the proceeding is initiated." *In re Albany Partners, Ltd.* 749 F.2d 670, 674 (11th Cir.1984). However, courts have defined "cause" broadly to include a lack of good faith in view of the non-exhaustive list of examples set forth in section 1112(b). Citing two cases from this district, the Court of Appeals for the Eleventh Circuit explained the rationale for such a construction as follows:

The pertinent legislative history states, "The court will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." H.R.Rep. No. 595, 95 Cong., 1st Sess. 406 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6362. Accordingly, the determination of cause under § 1112(b) is "subject to judicial discretion under the circumstances of each case." *In the Matter of Nancant*, 8 B.R. 1005, 1006 (Bankr.D. Mass.1981). The equitable nature of this determination supports the construction that a debtor's lack of "good faith" may constitute cause for dismissal of a petition. In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions. Particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the peti-

---

1. Although the deed recites that title was conveyed to Odessa Bryan [sic] and Locksley Bryan as tenants by the entireties, the two were not married at the time of the conveyance.

tion for lack of good faith is appropriate. *See In re Eden Associates,* 13 B.R. 578, 583–85 (Bankr.S.D.N.Y.1981); *In re Victory Construction Co., Inc.* 9 B.R. 549, 555–56, 558, 564–65 (Bankr.C.D.Cal. 1981); *In re G–2 Realty Trust,* 6 B.R. 549, 552–54 (Bankr.D.Mass.1980); *In re Dutch Flat Investment Co.,* 6 B.R. 470, 471–72 (Bankr.N.D.Cal 1980); *See also In the Matter of Levinsky,* 23 B.R. 210, 219–20 (Bankr.E.D.N.Y.1982); *In the Matter of Northwest Recreational Activities, Inc.,* 4 B.R. 36, 38–40 (Bankr.N.D.Ga.1980).

*Id.*

In *In re Wentworth,* 83 B.R. 705 (Bankr.D.N.D.1988), the court compiled a list of 14 fact patterns that courts have considered in finding bad faith:

1.  The debtor has few or no unsecured creditors;

2.  There has been a previous bankruptcy petition by the debtor or a related entity;

3.  The pre-petition conduct of the debtor has been improper;

4.  The petition effectively allows the debtor to evade court orders;

5.  There are few debts to non-moving creditors;

6.  The petition was filed on the eve of foreclosure;

7.  The foreclosed property is the sole or major asset of the debtor;

8.  The debtor has no ongoing business or employees;

9.  There is no possibility of reorganization;

10.  The debtor's income is not sufficient to operate;

11.  There was no pressure from non-moving creditors;

12.  Reorganization essentially involves the resolution of a two party dispute;

13.  A corporate debtor was formed and received title to its major assets immediately before the petition;

14.  The debtor filed solely to create the automatic stay.

*Id.* at 707. *See also In re Little Creek Development Co.,* 779 F.2d 1068, 1072–73

(5th Cir.1986). In finding bad faith, courts routinely appear to rely on the lack of any realistic possibility of reorganization, a factor referred to in subsections 1112(b)(1) and (b)(2). Accordingly, in some instances, a specific finding of bad faith merely seems to reinforce an already sufficient finding for dismissal.

In a recent opinion from this district, the court criticized the good faith filing requirement in conjunction with a motion to dismiss a chapter 11 case filed by an individual without a business operation. Although the court concluded that "Congress intended an individual not engaged in business to be eligible for Chapter 11, while at the same time assuming that such an individual would be an infrequent Chapter 11 petitioner because of the complexity of its procedure which was "primarily" designed for business, *In re Cook,* 98 B.R. 624, 625 (Bankr.D.Mass.1989), the court recognized the plethora of opinions that "view the statutory framework differently." *Id.* at 626. *See e.g. Wamsganz v. Boatmen's Bank of DeSoto,* 804 F.2d 503 (8th Cir. 1986); *In re Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985); *In re Martin,* 51 B.R. 490 (Bankr.M.D.Fla.1985); *In re Ponn Realty Trust,* 4 B.R. 226 (Bankr.D.Mass. 1980). Nevertheless, the court stated:

When a Chapter 11 petition is dismissed as a bad faith filing because the petitioner does not operate a business, what is "underneath" the analysis is the court's view of who should or should not be eligible to file, and in such dismissals a court at times makes no pretense at interpreting the governing eligibility provisions. Whether imposing a good faith filing requirement or interpreting the statutory filing standards, a court must be careful not to arrogate to itself the functions of the legislature. Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527 (1947). Congress could have denied Chapter 11 relief to those who do not operate a business, and it can be argued that it should have. But these considerations are not the province of a court. Both the statute and its legislative history make it plain that Congress did not do so. A

nonbusiness entity with little disposable income is certainly able to consummate a Chapter 11 plan if permitted to file, in light of the permissibility of a liquidating plan. *See* 11 U.S.C.S. § 1123(a)(5)(D) (Law.Co-op.1986 & Supp.1988). Dismissal should of course be ordered if the debtor is unable to effectuate a plan or unreasonable delays the process to the prejudice of creditors. 11 U.S.C.S. § 1112(b)(2) and (3) (Law.Co-op.1986 & Supp.1988). These considerations, however, are based upon individual circumstances. Dismissal should not be the product of a court's view concerning what type of entity is a proper Chapter 11 Debtor, or mere suspicion of the debtor's inability to consummate a plan without the debtor being afforded the opportunity to meet that issue head on.

*Id.* at 626–27.

The decision that the Court must make neither turns on the fact that the Debtor is an individual who is not engaged in business nor the fact that a significant number of the factors identified by the *Wentworth* court as indicia of bad faith are present here. Althouth the Court cannot ignore those considerations, the Court finds that the Debtor was afforded the opportunity to meet the issues of the likelihood of rehabilitation and of her ability to effectuate a plan "head on" and totally failed to meet the challenge.

With respect to the relief from stay motions, the Debtor had the burden of showing that the Cedar Street and Bartlett Street properties were necessary to an effective reorganization. Where MIC and the Bank presented evidence that cast substantial doubt on the possibility of reorganization, the Debtor was obliged, at a minimum, to provide "some kind of map which charts a path through Chapter 11 to a successful reorganization." *In re Grand Sports, Inc.,* 86 B.R. 971, 975 (Bankr.N.D. Ind.1988). The Debtor failed to do this and also failed to rebut the factual allegations made by MIC in its motion to dismiss. Accordingly, the Court has no trouble finding that there is an absence of a reasonable likelihood of rehabilitation here, as well as a profound inability to effectuate a plan.

In this case, the Debtor is an employee of her husband's law firm. She does not even have a regular salary. In her deposition she admitted that Bryan Realty had ceased operations over a year ago. Therefore, not only does the Debtor lack a viable business to reorganize, her statement of affairs, which was signed under penalty of perjury, is inaccurate, to say the least, as it lists her occupation as a real property manager of a business that for all practical purposes no longer exists.

The fact that the Debtor may be a beneficiary of certain trusts does not in any way cure the problem; it makes it worse. As one of several purported beneficiaries of the four trusts identified in her petition, the Debtor did not even attempt to make an offer of proof as to how she could organize, implement and control a reorganization effort that would involve complex financial matters and delicate negotiations with disenchanted lenders. In view of the overwhelming powers given to Locksley Bryan as trustee of three of the four trusts at issue and his status as the primary obligor and mortgagor of the trust property, it is inconceivable that Stephanie Bryan, ostensibly just one of several beneficiaries of the trusts, could propose, let alone implement, a plan of reorganization or even a liquidating plan. Even assuming the Debtor had some legal or practical ability as a trust beneficiary to effectuate a plan, the encumbrances on the trust properties are significant, and the Court suspects that, like MIC and the Bank, the mortgagees on the remaining properties would be entitled to relief from the automatic stay, thereby rendering the process of formulating a plan meaningless.

At the hearing, Debtor's counsel focused solely on the good faith issue. The Court has no doubt that from a subjective point of view only the Debtor filed the petition in good faith. Clearly, the Debtor was influenced both by her husband and her attorney and relied on their expertise in filing the Chapter 11. However, the Debtor's good faith argument falls far short of what was necessary to withstand the motions to dismiss, as the Debtor was not even able to

prove that she is indeed a beneficiary of the trusts in question. Viewed another way, the Debtor was unable to establish that the case was really anything more than a "no-asset" case, thereby rendering the preparation of even a "pot" plan impractical.

Accordingly, the Court hereby allows the alternative motions of MIC and the Bank and dismisses this Chapter 11 proceeding.[2] It is noteworthy that while this opinion was in draft, counsel to the Debtor, appearing before the Court in the related matter of Odessa Bryant, informed both the Court and MIC that the Debtor now consents to the dismissal of her Chapter 11 case.

---

**2.** The Court notes that to the extent that the Debtor has a legitimate concern about her guaranty of her husband's obligations to MIC, that concern could have been met by the filing of a Chapter 7 petition.