In re HARVEY ROAD ASSOCIATES
VIII, Debtor.

Bankruptcy No. 91–19218–WCH.
Adv. No. 91–2022.

United States Bankruptcy Court,
D. Massachusetts.

April 23, 1992.

Daniel J. Carragher, Day, Berry & How-
ard, Boston, Mass., for UNUM.

Robert Somma, Goldstein & Manello, Boston, Mass., for debtor.

## MEMORANDUM DECISION REGARDING MOTION TO PROHIBIT USE OF CASH COLLATERAL AND MOTION FOR RELIEF FROM STAY

WILLIAM C. HILLMAN, Bankruptcy Judge.

UNUM Life Insurance Company of America ("UNUM"),[1] filed motions to prohibit use of cash collateral and for relief from stay. The Court held a preliminary and a final hearing on the motions. For the reasons set forth below, the Court denies both motions.

Harvey Road Associates VIII ("Harvey VIII") is a New Hampshire limited partnership. It owns several properties, only one of which is pertinent to these motions. On November 1, 1991, Harvey VIII's general partner, Harold Brown, filed an involuntary petition against the partnership. An order for relief was entered on December 4, 1991.

UNUM is a secured creditor of Harvey VIII. It holds a first mortgage and assignment of rents on Harvey VIII's leasehold interest in a parcel of land in Manchester, New Hampshire improved by a single story office and light industrial building ("the Property"). The outstanding amount owed is in excess $3,600,000.00. UNUM last received a payment on October 1, 1991.

In addition to the first mortgage held by UNUM, the land is also encumbered by a statutory lien for unpaid real estate taxes and a second mortgage held by the FDIC as receiver of the Bank of New England.

UNUM took no action to collect rents prior to the present motion.

### MOTION TO PROHIBIT USE OF CASH COLLATERAL

In the motion, UNUM asserts that "all checks, cash, security deposits, and other payments received by Harvey VIII from tenants of the Premises are 'cash collat-

eral' as defined in 11 U.S.C. § 363(a)" and therefore subject to the requirements of § 363(c). Harvey VIII states that the cash flow from the Property is not cash collateral under applicable state law and that the debtor should not be restrained from its use.

Pursuant to 11 U.S.C. § 363(a), cash collateral is

[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whether acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

Section 552(b) provides in part:

... if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to the property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law ...

Pursuant to these sections, if UNUM holds a pre-petition perfected interest in the rents, the post-petition rents are also subject to that interest and therefore are cash collateral. Section 552(b) requires an examination of the applicable nonbankruptcy law in order to determine whether UNUM holds such an interest.

■ The applicable nonbankruptcy law is the law of the state where the property is located. *Butner v. United States,* 440 U.S. 48, 49, 99 S.Ct. 914, 915, 59 L.Ed.2d 136

---

**1.** UNUM filed the motions as UNUM Pension and Insurance Company. UNUM Life Insurance Company of America is now the successor

by merger to UNUM Pension and Insurance Company.

(1978). Although *Butner* was decided under the Bankruptcy Act, this Court has ruled that it is applicable to cases arising under the Bankruptcy Code. *In re Milford Common J.V. Trust*, 117 B.R. 15 (Bankr. D.Mass.1990); *In re Prichard Plaza Associates L.P.*, 84 B.R. 289, 293 (Bankr. D.Mass.1988). That state is New Hampshire.

■ Both parties refer to *In re Rancourt*, 123 B.R. 143 (Bankr.D.N.H.1991). That case seems to announce a principle applicable to both jurisdictions there involved, Massachusetts and New Hampshire. *Id.* at 148. The ultimate conclusion reached is consistent with Judge Goodman's views as to Maine law, *In re Somero*, 122 B.R. 634 (Bankr.D.Me.1991), but inconsistent with the conflicting lines of cases within this district. *Compare In re Milford Common J.V. Trust, supra* (Judge Lavien); *In re Ashford Apartments L.P.*, 132 B.R. 217 (Bankr.D.Mass.1991) (Judge Hillman); and *In re Concord Mill L.P.*, 136 B.R. 896 (Bankr.D.Mass.1992) (Judge Kenner) *with In re Prichard Plaza Associates L.P., supra*, and *In re Ledgemere Land Corp.*, 116 B.R. 338 (Bankr.D.Mass.1990) (both Chief Judge Queenan).

The Court feels that it must make a broader search for the controlling rule. The parties agree that there is little assistance to be found in New Hampshire case law.

In *Cavis v. McClary*, 6 Grafton 67, 5 N.H. 529 (1831), the court had to determine which of two mortgagees was entitled to the rents of the mortgagor's tenant. The court held that the second mortgagee was so entitled because it had entered and given notice. The *Cavis* Court used Massachusetts case law for support.

The rule in *Cavis* appears to conform to what all of the Massachusetts bankruptcy judges have held—that something beyond the mere taking of an assignment of rents is required before they rise to the dignity of cash collateral. It is only in the magnitude of the required acts that my colleagues differ.

UNUM takes a broader stance and argues that, when looking at state law, the Court must distinguish between the concepts of creation, perfection, and enforcement of a security interest. UNUM contends that the recording of an assignment of rents is all that is required under New Hampshire law to obtain a perfected interest in rents. It argues that the cases in that state referring to a mortgagee taking possession relate to the enforcement of the interest and not the perfection. Various courts support this contention. *See In re Somero*, 122 B.R. 634 (Bankr.D.Me.1991). The Court, however, does not agree.

The language of the assignment of rents is nominally an absolute assignment of rents with a license-back to the mortgagor to collect and enjoy them "until a default has occurred, and has continued beyond any applicable grace period...." If the assignment were indeed absolute, the assignee/mortgagee would have a right to rents without any further action on its part. *Great West Life Assurance Co. v. Rothman (In re Ventura–Louise Properties)*, 490 F.2d 1141, 1145 (9th Cir.1974). The Court concludes that the assignment creates the functional equivalent of an equitable mortgage applied to rents, and that the assignee's rights are conditional and not absolute.

The controlling provisions are found in the "Assignment of Rents, Leases and Other Benefits" dated as of November 22, 1985 ("the Assignment"). It speaks out of both corners of its language.

The operative provisions are:

This assignment is absolute and effective immediately. Notwithstanding the foregoing, Assignor shall have a license to receive, collect and enjoy the rents, income, profits and benefits accruing from the Premises until a default has occurred, and has continued beyond any applicable grace period....

The assignment-and-license-back concept is fairly standard in such documents. *See, e.g.* W. Hillman, Commercial Loan Documentation 250 (3d ed.1990). To place the argument in Uniform Commercial Code ("UCC") terms, as suggested both by UNUM's argument and the language of

§§ 363(a) and 552(b), the Court finds the issue to be one of attachment, not of perfection or enforcement.

A security interest is not effective until it has attached. UCC § 9–203(2). Attachment requires that an agreement be reached. UCC § 9–203(1). "Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing. UCC § 1–201(3).

The Court finds as a fact that, under the agreement of the parties, the attachment of UNUM's right to rents was subject to a condition precedent—default beyond any cure period—and hence had not attached. Attachment under these circumstances requires some affirmative act by the assignee. Since there was no action of any kind, it is not necessary to discuss the *Prichard–Milford* dichotomy.

UNUM did not have a perfected interest in the rents prior to the commencement of the case and under § 552(b) does not have a perfected interest in the postpetition rents. Accordingly, under § 363, the rents from the Property are not cash collateral. The Court therefore denies UNUM's motion to prohibit use of cash collateral.

## MOTION FOR RELIEF FROM STAY

UNUM seeks relief from stay on several grounds. First of all, it states that cause exists for relief because the filing was in bad faith.[2] Secondly, UNUM argues that Harvey VIII does not have equity in the property and the property is not necessary to an effective reorganization. Lastly, UNUM contends that its interest in the property is not adequately protected.

■ Under 11 U.S.C. § 1112(b) of Code, a petition may be dismissed for cause including ten specific examples. These factors are not limiting. 11 U.S.C. § 102(3). Courts have held that lack of a good faith filing is cause for dismissal. *In re Bryan,* 104 B.R. 554 (Bankr.D.Mass. 1989); *In re the Bible Speaks,* 65 B.R. 415 (Bankr.D.Mass.1986). This Court agrees that bad faith is cause for relief from stay or the dismissal of a petition.

After the resolution of that issue the Court needs to consider what actually constitutes bad faith. The courts that have examined the issue have generally referred to the following factors:

1. The debtor has few or no unsecured creditors;
2. The debtor has previously sought relief;
3. The petition was filed on the eve of foreclosure;
4. The foreclosed property is the sole or major asset of the debtor;
5. The debtor has no ongoing business;
6. The debtor has no ability to reorganize;
7. The reorganization involves a two party dispute;
8. The corporate debtor was formed to effectuate the filing;

*Bryan* 104 B.R. at 558.

UNUM argues that the petition was filed in bad faith principally because it was filed on the eve of foreclosure and was intended to shield the principal asset of the debtor. Additionally, UNUM states that Harvey VIII has few unsecured creditors and no ability to reorganize. Harvey VIII agrees that the filing occurred to avoid a lien enforcement action but states that it does have a business which it intends to reorganize.

■ UNUM, as many moving parties before it, have culled some of the aforementioned factors to support the argument that a single asset real estate debtor is not entitled to relief under the Bankruptcy Code. Although such a debtor is a more likely candidate for a finding of bad faith, it is not always the case. Single asset debtors are entitled to relief under Chapter 11. *In re Carolin Corp.,* 886 F.2d 693, 704 (4th Cir.1989). This Court believes that the aforementioned factors can be used as a guidepost for the overall consideration of

---

**2.** Although bad faith is generally discussed within the context of a motion to dismiss, it is also considered cause within § 362(d)(1). *Phoenix Picadilly Ltd. v. Life Insurance Co. (In re Phoenix Picadilly Ltd.),* 849 F.2d 1393 (11th Cir.1988).

whether there is an intent on the part of the debtor properly to use the provisions of the Code to effectuate a reorganization.

■ Based on the testimony offered at the hearing, the conduct of Harvey VIII to date, and the disclosure statement, the Court agrees that Harvey VIII has few unsecured creditors and the petition was filed when the FDIC started a lien enforcement action. The debtor has not, however, previously filed for relief, the property at 7 Parameter Road is not the sole asset of the debtor, the debtor does have an ongoing business, and the reorganization does not involve solely a two party dispute. The Court finds that Harvey VIII has complied with the requirements of the Code and evidences an intent to realize the benefits thereunder. The Court is therefore satisfied that there was no bad faith in the filing of the petition and that cause does not exist for relief from the stay on that basis.

■ Failing a finding of bad faith, UNUM would next have the Court find that Harvey VIII does not have any equity in the property and that the property is not necessary for an effective reorganization. Pursuant to § 362, UNUM has the initial burden with respect to the issue of lack of equity. If it meets that burden the debtor is then required to show an effective reorganization in progress.

Both parties presented offered expert testimony with respect to the value of the Property. The witness for the debtor was not an appraiser. The Court found his testimony to be not credible and gives it no weight. The Court was more persuaded by UNUM's appraiser but still finds it necessary to adjust his findings.

■ The appraiser found that the property was worth $3,600,000.00 after employing a sales comparison approach and income approach. Given the nature of the current economy in New England and the testimony from the appraiser that not all pertinent sales were used, the Court does not give the sales approach much weight. Additionally, the income approach is the

more useful given the property's earning power. *See In re Southmark Storage Associates L.P.*, 130 B.R. 9 (Bankr.D.Conn. 1991). Within the income approach, the Court found the first method, the discounted cash flow method, to be the more applicable.

In using this method, the vacancy rate should be adjusted. The appraiser estimates tenant renewal at fifty percent. If the space is vacated, he estimates an eighteen month lease-up period and therefore a vacancy period is estimated at nine months for an average of twelve percent. The Court finds this to be overly conservative.

In his report, the appraiser explains that the property is located in the economic hub of the state. It is situated close to the a major airport which is about to commence a 50 million dollar expansion. Additionally, the Property is fully leased and has very reliable tenants whose leases potentially extend for years.[3] Accordingly, the Court finds that the vacancy rate of nine months for each space at the time of renewal is too high.

The Court also considers the discount rate used too conservative given current interest rates. The appraiser chose the rate of 13.00 based on the quality of the property and prevailing market conditions.

After carefully reviewing the appraisal and taking into consideration the testimony given, the Court finds that the value of the property is $4,000,000.00.

From the value of the Property, the Court must deduct the outstanding encumbrances to arrive at the conclusion as to the equity. For (d)(2)(a) purposes, it is necessary to consider not only the indebtedness which is the object of the motion but also all other encumbrances on the property. *First Agricultural Bank v. Jug End in the Berkshires (In re Jug End in the Berkshires)*, 46 B.R. 892, 901 (Bankr. D.Mass.1985). *See also Stewart v. Gurley*, 745 F.2d 1194 (9th Cir.1984); *In re Royal Palm Square Assoc.*, 124 B.R. 129, 132 (Bankr.M.D.Fla.1991). The transcript reveals that the totality of encumbrances on

---

**3.** The tenants in the Property include the U.S. Post Office under a triple net lease until 1999, New England Telephone under a lease until 1993 with two 5 year options, and Phillip Morris under a triple net lease until November of this year with a 2–3 year option.

the Property far exceed its value. Therefore, Harvey VIII does not have equity in the Property.

However, the Court finds as a fact that the Property, the primary asset of the debtor, is essential for a reorganization. As a result, relief under § 362(d)(2) is inappropriate.

■ The Court must next determine whether relief is warranted based on the "lack of adequate protection of an interest in property." § 362(d)(1). UNUM argues that relief should be granted because its interest in the Property is not adequately protected.

What constitutes adequate protection has been the subject of much discourse. A principal consideration is whether the secured party is oversecured or undersecured. As the value of the Property is approximately the amount that is owed (including accrued interest) the only finding that the Court can make is that UNUM is secured.

UNUM would have the Court find that it is undersecured and therefore entitled to adequate protection because the value of the property is declining, citing *United States Savings Association of Texas v. Timbers of Inwood Forest Association Ltd.*, 484 U.S. 365, 370, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). Based on the appraisal, however, there is no indication that there is a diminution in the value of the real estate. Accordingly, the Court, at this time finds that UNUM is adequately protected and will not grant relief on that basis.

Based on the foregoing, the Court denies relief from stay without prejudice at this time. In order that UNUM be kept adequately protected for the time being, the Court orders the debtor to cure any outstanding real estate tax arrearages and to keep current going forward.

This decision is in accordance with the Court's previous order and ruling from the bench.