**In re HAMMERSMITH TRUST, LLC, Debtor.**

**Bankruptcy No. 99–10881–9P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 29, 1999.

Marsha G. Rydberg, Tampa, Florida, for debtor.

Edwin G. Rice, Robert B. Glenn, Tampa, Florida, Michael J. Quilling, Dallas, Texas, Scott L. Baena, Miami, Florida, John Yanchunis, Tampa, Florida, Richard Militana, Webster, Florida, Gerald R. Sage, Tampa, Florida, Assistant United States Trustee, Tampa, Florida, for movant.

**ORDER ON MOTION TO DISMISS BANKRUPTCY CASE OR ALTERNATIVELY, TO TRANSFER VENUE**

ALEXANDER L. PASKAY, Chief Judge.

The Motion under consideration is the initial salvo fired by Michael J. Quilling (Receiver), attacking the right of Hammersmith Trust, LLC, (Debtor) to seek relief under the provisions of Chapter 11 of the Bankruptcy Code. The Receiver contends that the Debtor filed its Petition for Relief in bad faith and that, therefore, the case should be dismissed for "cause" pursuant to Section 1112(b) of the Bankruptcy Code. In the alternative, the Receiver contends that even if the case is not dismissed, it should be transferred because it was filed in an improper venue.

Pursuant to a request to consider the Motion on an expedited basis, this Court held a hearing on short notice, at which time this Court heard extensive argument by counsel. Having considered the undisputed documentary evidence offered and introduced into evidence, this Court now finds and concludes as follows:

In early 1999, the Securities and Exchange Commission (SEC) filed a Complaint in the United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 3:98–CV–2689–X. The Complaint named seventeen de-

fendants and two "relief" defendants, alleging numerous violations of securities laws and seeking disgorgement of millions of dollars of investors' funds and imposition of civil penalties. The original Complaint did not name the Debtor either as a defendant or as a "relief" defendant, whatever that term means. In its Second Amended Complaint, however, the SEC named as defendants, solely for purposes of equitable relief, Hammersmith Trust, LLC, a Tennessee limited liability company and Hammersmith, Ltd., an Irish corporation.

On January 22, 1999, the District Court entered an Order Freezing Assets and Appointing a Receiver. The Order appointed Michael J. Quilling to serve as Receiver for Hammersmith Trust, LLC, and restrained and enjoined Hammersmith Trust, LLC, (without further identifying whether referring to the Tennessee or the Irish corporation), from directly or indirectly expending any funds or disposing of any assets. The Order directed the Receiver to take custody, control and possession of all assets, monies, securities, and all real and personal property wherever situated in which Hammersmith Trust, LLC, has any interest whatsoever, including the money claimed to be owed to Howe Financial Trust (Howe) by Hammersmith in the amount of $2,745,000. The Receiver made a demand on Hammersmith Trust, LLC, to repay this sum to the Receiver on behalf of Howe.

Thereafter, on March 12, 1999, the District Court entered another Order Freezing Assets and Appointing Temporary Receiver. (Exh. No. 2 to Motion to Dismiss). This Order appointed Quilling as temporary Receiver to take custody, possession and control of all assets, monies, securities and properties, etc., belonging to several entities and individuals, including Benjamin David Gilliland. The Order directed Gilliland to transfer to the Receiver all monies or securities in any accounts anywhere in the world in the name of Hammersmith Trust, LLC, and other entities,

within five days from the date of service of the Order. In paragraph 5, the Order restrained numerous entities (none of whom were named as defendants in the SEC's original Complaint but some of whom were named in the Second Amended Complaint) from filing or prosecuting any action or proceeding against the Receiver or any action or proceeding which would affect the Receivership Assets, including any proceeding under the United States Bankruptcy Code, except with permission of the Court. This March 12, 1999, Order did not restrain Hammersmith Trust, LLC, from filing bankruptcy.

On March 26, 1999, Gilliland and Hammersmith Trust, LLC, entered into an agreement with the Receiver and agreed to pay to the Receiver the amount of $2,745,000 in specified installments. In exchange, the Receiver temporarily abated all proceedings and released certain assets of Gilliland and Hammersmith Trust, LLC. The agreement was approved and culminated in the entry of an Agreed Order on March 26, 1999. (Exh. No. 3 to Motion to Dismiss.)

Gilliland failed to live up to the Agreement and did not pay the installments which became due. On May 25, 1999, the District Court entered an Order Finding B. David Gilliland in Contempt of Court. (Exh. No. 4 to Motion to Dismiss). Counsel for Gilliland promised that Gilliland could purge himself of contempt if he were given forty-five days to pay the sums required by the Agreed Order. Based on this promise, the District Court gave Gilliland until July 2, 1999, to purge himself by paying $1,695,000 to the Receiver. The Court also stated that if Gilliland failed to purge himself, he would be incarcerated at any time after 3:00 p.m. on July 2, 1999.

On July 1, 1999, Gilliland filed an Emergency Motion to Vacate the May 25, 1999 Order, and asked to extend the July 2nd deadline, stating under oath that he is willing but is financially unable to personally comply with the Order of the Court. The Motion also stated that he was unable

to cause Hammersmith Trust, LLC, or Hammersmith Trust, Ltd. to comply with the order because Hammersmith Trust, Ltd. is "out of business" and because on July 2, 1999, Hammersmith (sic) sought protection under Chapter 11 of the Bankruptcy Code. Ostensibly, the entities Gilliland referred to in his Affidavit are the Tennessee LLC, and the Debtor, the Nevis, West Indices corporation. (Declaration of B. David Gilliland, Exh. A attached to Emergency Motion to Vacate.)

It is not unreasonable to infer from the documents filed in the Texas litigation that the Affidavit referred to the entity, Hammersmith, Ltd., the Irish corporation. It appears that in an Affidavit filed by Gilliland in the District Court in connection with a Motion to Quash Service on February 22, 1999, Gilliland stated that Hammersmith Trust, LLC, (Tennessee) was administratively dissolved in September 1998 and that Hammersmith Trust, LLC, (West Indies) is a foreign corporation which is not registered to do business in Florida. The existence of this entity was never disclosed to the District Court in Texas during any of the proceedings in the SEC suit.

On May 11, 1999, Gilliland filed his Response to the Motion to Show Cause filed by the Receiver and also filed a Declaration in which he identified himself as the "Fund Manager" for Hammersmith Trust, LLC. He also stated that Hammersmith Trust, Ltd. was not doing any business and referred to them as the "Hammersmith Entities." (Exh. B filed on May 11, 1999).

On July 2, 1999 at 12:06 p.m. or slightly less than three hours before the deadline, Hammersmith Trust, LLC, filed a voluntary Petition for Relief under Chapter 11. The Petition was signed by Jack Higgins, Manager LLC. Nowhere in the style of the Petition filed in this Court is there any indication that the entity which filed the Chapter 11 Petition was any other than Hammersmith Trust, LLC. It was not until the hearing on the Motion under consideration that counsel for the Debtor introduced into evidence an Endorsement Certificate issued on February 25, 1998, by the Office of the Registrar of Companies. The Certificate indicates that Hammersmith Trust, LLC, was incorporated in the Island of Nevis.

The Petition was not signed by Gilliland but by Jack Higgins, Manager LLC, (sic). The Petition was filed in the Fort Myers Division of the Bankruptcy Court for the Middle District of Florida, indicating that the Debtor maintained its principal place of business in Fort Myers and stating the location of its business as 9600–29 Daniels Parkway # 173. It now developed that the address given is a vacant lot. The only possible nexus this Debtor ever had with this District is the rental of a mailbox from Mail Box Etc.

Even though it appears facially that Gilliland does not occupy any position with this Debtor, surprisingly, on July 12, 1999, the Debtor also filed Adversary Proceeding No. 99–405 in this Court, seeking injunctive relief pursuant to Section 105 of the Bankruptcy Code. The Debtor, who is now identified as a Nevis, W.I. LLC, named multiple defendants in this adversary proceeding, including the SEC and the Receiver. In Paragraph 33 of the Verified Complaint, the Debtor alleged that the Debtor intends to propose a Plan of Reorganization and intends to repay the principal amount owed to all allowed claimants with a pro rata return of interest. It also alleged that Gilliland is indispensable to completing the task of formulating a disclosure statement and Plan. The Debtor also alleges in Paragraph 35 that as a result of the numerous lawsuits filed against it, he has been forced to expend at least "50 hours per week on matters which, if continued, will deprive the Debtor of Gilliland" (sic) thereby putting the rehabilitation of this Chapter 11 in serious jeopardy. The ironic part in this picture is that Gilliland is currently in jail pursuant to the contempt order and will remain in jail, no doubt, for quite a while until the District Court relents and accepts his defense that

because of no fault of his, he was unable to comply with the disgorgement order entered by the District Court in the suit filed by the SEC.

In addition to the Complaint, the Debtor also filed a Verified Emergency Motion for Temporary Restraining Order or Preliminary Injunction, seeking to enjoin the prosecution of four specific proceedings commenced against several entities including Hammersmith Trust, LLC, and the suit filed by the SEC against the Funding Resource Group, et al. On the same date, July 12, 1999, the Debtor, again identified as Nevis, W.I. LLC, filed an Amended Verified Complaint for injunctive relief naming a multitude of defendants previously named in the first Complaint but does not include the SEC, Gilliland or the Receiver. On the very same date, the Debtor also filed a Motion for Protective Order seeking to be relieved of the obligation to appear at the deposition scheduled by the Receiver.

To further turn this already confusing morass upside down, on July 22, 1999, the District Court entered an Order entitled, Order Freezing Assets, Restraining Appointment of Receiver and Authorizing Expedited Discovery. The Application filed by the SEC sought an Order freezing the assets of numerous entities referred to as "Relief Defendants," including Hammersmith Trust, LLC, and Hammersmith Trust, Ltd., but not the assets of Hammersmith Trust, LLC, the Nevis, West Indies corporation. In Paragraph 1 of the Order, the District Court found that it has jurisdiction over the Relief Defendants, including Hammersmith Trust, LLC, and Hammersmith Trust, Ltd. On the bottom of the page is a handwritten remark that "Hammersmith Trust, LLC, when referred to herein refers to any and all Hammersmith Trusts entities, including but not limited to the Tennessee entity and the Nevis, West Indies entity." The handwritten insertion appears to be initialed by the District Judge, although it may not have been written by him. There appears to be

no evidence that the Nevis, West Indies entity was never served with a Complaint or with service of process.

In Paragraph 6 of the July 22, 1999, Order, Michael J. Quilling is appointed as Temporary Receiver for the "Relief Defendants," including Hammersmith Trust, LLC, and Hammersmith Trust, Ltd., with directions to the Receiver to take custody, possession and control any and all assets of whatever kind and description belonging to the "Relief Defendants," including all documents relating to the Receivership assets.

The Order directed the Receiver to file with the Court within twenty-five days after the entry of the Order, a preliminary report and based on his investigation, a recommendation as to whether the claims against the "Relief Defendants" should be adjudged in the Bankruptcy Court. The Order also provided that upon receipt of the report, the District Court would decide whether it should authorize the Receiver to commence "bankruptcy proceedings" as to the "Relief Defendants." It is unclear whether the District Court meant to state, "to commence 'a bankruptcy case'" or to file an adversary proceeding in the bankruptcy court in the currently pending Chapter 11 case of the Debtor.

Based on these facts, the Receiver contends that the Petition was filed for the sole purpose of keeping Gilliland out of jail to circumvent the District Court Orders and escape the consequences of the contempt citation of the District Court in the Northern District of Texas. The Receiver contends that it was not until the commencement of the Chapter 11 case that the information first surfaced that Hammersmith Trust, LLC, the entity named in the Texas litigation and identified in the Second Amended Complaint, first as a Tennessee corporation and then as an Irish corporation, respectively, are the same as the Debtor who turned out to be a Nevis, West Indies corporation. The Receiver contends that Gilliland just used these entities to "play a shell game" by "now you

see it, now you don't" and should not be permitted to use the bankruptcy system to hide the ill-begotten wealth obtained through an intricate world-wide Ponzi scheme, used to cheat millions out of investors. According to the Receiver, this is a case of the classic "bad faith" filing, citing *Matter of Winn,* 43 B.R. 25, 28 (Bankr. M.D.Fla.1984), and that, therefore, it is appropriate to dismiss this Chapter 11 case pursuant to Section 1112(b) for "cause."

In opposing the Motion, the Debtor contends that the Debtor is a bona fide Nevis, West Indies corporation. The Debtor contends that the Debtor was never sued and served with any Complaint and was never subjected to the jurisdiction of the District Court. The Debtor contends that it has its own creditors and is eligible for relief under Section 109(b) of the Bankruptcy Code. The Debtor requests that it be given an opportunity to attempt to reorganize. Counsel for the Debtors, while conceding that the only nexus the Debtor has with Fort Myers, Florida is its rental of a mailbox from Mail Boxes ETC, contends that if a Debtor does not have a principal place of business or principal assets in the United States, it may file in any district. Accordingly, since 28 U.S.C § 1408 does not cover the facts in this case since the Debtor is eligible for relief logically this should be the proper rule.

Although in addition to the Motion to Dismiss, this Court also scheduled to consider and hear argument on a Motion to Transfer the Chapter 11 case for improper venue. It is evident that the resolution of the Motion to Dismiss the Chapter 11 case presents a threshold issue since if the Motion is granted, all other pending matters in this Chapter 11 case are moot.

As noted earlier, the Motion to Dismiss is based on the contention of the SEC that the Petition was filed in bad faith, therefore, there is "cause" to dismiss the Chapter 11 case pursuant to Section 1112(b) of the Bankruptcy Code. Under the Bankruptcy Act of 1898, the concept of "good faith" of debtors who sought relief under Chapter X of the Bankruptcy Act, which was the corporate reorganization chapter, was a prominent feature. A corporate debtor had a burden to establish good faith, or to put it differently, to negate the bad faith pursuant to Section 141–145 of the Bankruptcy Act. The debtor had a burden to make that initial showing before the Petition was even approved. The Bankruptcy Code, as enacted, no longer requires an initial showing of good faith as a condition precedent for relief. Thus, theoretically, every debtor eligible for relief under Section 109 may proceed and attempt to reorganize. The only express reference to the concept of good faith appears in Section 1129 which requires that the plan or reorganization must be proposed in good faith. From the foregoing, one might conclude that the concept of good faith as a precondition for relief under that chapter was eliminated by the Code. Nothing could be further from what really happened. Shortly after the enactment of the Code, several courts were faced with this very issue and held that lack of good faith of a Debtor seeking relief under Chapter 11 of the Code was "cause" and warranted dismissal. *See In the Matter of 299 Jack–Hemp Associates,* 20 B.R. 412 (Bankr.S.D.N.Y.1982) and in *In re Thirtieth Place, Inc.,* 30 B.R. 503 (9th Cir. BAP 1983).

The abuse of the judicial process was frequently found to be the basis to conclude that the Petition was filed in bad faith. *In re Bayport Equities Corp.,* 36 B.R. 575 (Bankr.C.D.Cal.1983) (repeat filings); *In re Natural Land Corp.* 825 F.2d 296 (11th Cir.1987); *Matter of Port Richey Service Corp., Inc.,* 44 B.R. 634 (Bankr. M.D.Fla.1984). In this case, the debtor filed the Petition for the admitted purpose to delay the enforcement of a non-appealed final decree entered in state court which ordered the debtor to remove a treatment plant from the land owned by another. In the case of *In re Martin,* 51 B.R. 490 (Bankr.M.D.Fla.1985) the Chapter 11 case

was dismissed for bad faith filing when it was clear the sole purpose of seeking relief in the bankruptcy court was to escape the financial consequences of polluting the environment by the debtor.

The Eleventh Circuit in the case of *In re Natural Land Corp., supra,* held that "the taint of a Petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by the debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement." This Court in the case of *In re University Commons, L.P.,* 204 B.R. 80 (Bankr. M.D.Fla.1996), based on *Natural Land,* dismissed the Chapter 11 and held that no amount of equity can cleanse a Petition which was filed in bad faith. *See also In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988).

The case of *Matter of Winn, supra,* presents a remarkable resemblance to the instant case pending before this Court. The debtor in the *Winn* case was an attorney. The District Court found the Debtor to be in civil contempt for the debtor's failure to comply with several orders of the District Court. This court found that the primary, if not the sole purpose, of filing the Chapter 11 was to frustrate the contempt proceedings in the United States District Court for the Southern District of Mississippi. This Court also found that an attempt by the Debtor to circumvent or escape the consequences of a contempt judgment issued by a court of competent jurisdiction was never a legitimate aim to be achieved by using the rehabilitation provisions of Chapter 11 and it is without doubt constitutes an impermissible use of the bankruptcy system.

 It is now well established that evidence of an intent to abuse or misuse the reorganization process is sufficient "cause" to warrant the dismissal under 1112(b) of the Code. *299 Jack–Hemp Associates, supra; In re Spenard Ventures, Inc.* 18 B.R. 164 (Bankr.Alaska 1982). The Eleventh Circuit in the case of *In re Wal-*

*dron,* the courts considered the good faith of the debtor and in this connection stated that while the term "good faith" is undefined it means that the Petition must be filed with honest intent and genuine desire to utilize the provisions of the Code to reorganize and not merely as a device to serve some sinister or unworthy purpose and the courts should not and cannot tolerate such misuse of the reorganization process.

While it might be contended as it is asserted by counsel for the Debtor that *Winn* was an individual and the Debtor is a corporation, this is merely a distinction without difference. It is crystal clear from this record considering not only what took place in Texas, but also what occurred before this Court that this Petition was filed in bad faith. The debtor was never identified initially on the Petition as Nevis West Indies Corporation, but merely as Hammersmith Trust, LLC. This was certainly misleading. The principal place of the Debtor's business stated in the Debtor's Petition is a vacant lot and a fictitious non-existent address. The record is replete with evidence that the existence of this Nevis West Indies Corporation was never surfaced in the Texas litigation until the District Court entered its Order Freezing Assets, Reinstating Appointment of Receiver and Authorizing Expedited Discovery on July 22, 1999.

Whether or not the District Court had the power to impose a receivership for the assets of the Debtor who already has a Chapter 11 case pending is not for this Court to decide. At first blush, the proposition clearly appears to be absurd and would be, no doubt, a violation of the automatic stay.

The very same issue was considered by the Fifth Circuit Court of Appeals in the case of *Securities and Exchange Commission v. First Financial Group of Texas, et al.,* 645 F.2d 429 (5th Cir.1981). In this case the District Court appointed a Receiver at the request of the SEC and directed

the Receiver to take exclusive control of the corporate assets of the defendant. The order appointing a Receiver was entered after an involuntary bankruptcy case was already commenced against First Financial Group of Texas. The Fifth Circuit in rejecting the contention that the appointment of a Receiver after the commencement of the bankruptcy case was a violation of the automatic stay held that the continuing civil enforcement proceeding brought by a Governmental unit and the enforcement of the injunctive relief are exempted from the automatic stay provisions of Section 362(a) by virtue of Section 362(b)(4) and (5), citing *National Labor Relations Board v. Evans Plumbing Company*, 639 F.2d 291, 293 (5th Cir.1981). The court also considered whether the well established equitable remedy, the appointment of a Receiver, is available to the SEC if the receivership involves taking control and possession of the properties of a debtor. The court noted that the legislative history of Section 362 which prohibits an act to obtain possession was not intended to include the judicial appointment of a Receiver pursuant to a governmental unit's enforcement of its police or regulatory power. Citing S.Rep. No. 95–989, 95th Cong.2d Sess. 50 (1978), U.S. Code Cong. & Admin. News 5787, 5836, H.R. Rep. No. 95–595, 95th Cong.2d Sess. 341, (1977), U.S.Code Cong. & Admin. News 5963, 6297.

While this case involved the interpretation of the original version of the Reform Act, 28 U.S.C. § 1471(e), the current version of the jurisdictional grant by 28 U.S.C. § 1334 does not require a different result. The court concluded that the appointment of a Receiver in a regulatory enforcement action was not made in contravention of the exclusive jurisdiction of the bankruptcy court.

As the case now stands, the Receiver appointed by District Court in Texas is vested with the power of full control and possession of all assets of this Debtor. From this is follows that until the District Court or if there is a review, a Court of Appeals modifies that Order, this Debtor would never be able to propose a Plan or Reorganization since the Receiver would be in full control of its economic life and its affairs. This Debtor, according to the Affidavit filed by Gilliland in the District Court, is not authorized to do business in the State of Florida, it has no employees, appears to have no assets and for all practical purposes is a non-functioning defunct corporation. Moreover, by virtue of the receivership imposed upon the Debtor by the U.S. District Court in Texas, the Receiver has full control and possession of all assets, whatever those assets are, of this particular Debtor. In the last analysis, as noted earlier, this case was filed for the sole purpose of keeping Mr. Gilliland out of jail and not for any legitimate purpose consistent with the Congressional aim to enable financially distressed Debtors to achieve rehabilitation through the remedial provisions of Chapter 11 of the Bankruptcy Code.

In light of the foregoing it is unnecessary to rule on whether or not the fictitious venue selected by this debtor was proper, a proposition not without great doubt and also to rule on the debtor's Motion to obtain injunctive relief protecting Gilliland. For this reason, this Court will enter a separate order dismissing Adversary Proceeding No. 99–405 and the Motions filed in that adversary proceeding.

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss Bankruptcy Case be, and the same is hereby, granted and this Chapter 11 case is hereby dismissed.